ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL IX

| | | |
|---|---|---|
| GRISELLE SANTANA<br><br>QUERELLANTE<br>RECURRENTE<br><br>V.<br><br><br>CARIBBEAN SOLAR<br>ENERGY LLC<br><br>QUERELLADOS<br>RECURRIDOS | TA2025RA00283 | *REVISIÓN DE DECISIÓN ADMINISTRATIVA* procedente del Departamento de Asuntos al Consumidor<br><br>Caso Núm.:<br>ARE-2024-006671<br><br>Sobre:<br>Contrato y Obras de Servicios |

Panel integrado por su presidenta, la juez Brignoni Mártir, el juez Salgado Schwarz y la juez Aldebol Mora

**Brignoni Mártir, Juez Ponente**


**SENTENCIA**


En San Juan, Puerto Rico, a 10 de noviembre de 2025.

Comparece ante nos, Griselle Santana Ortega (en adelante, "Santana Ortega" o "recurrente"), a los fines de solicitar nuestra intervención para que dejemos sin efecto la *Resolución* emitida el 20 de agosto de 2025, notificada el 21 de agosto de 2025, por el Departamento de Asuntos del Consumidor (en adelante, "DACo"). Mediante el referido dictamen, la agencia recurrida desestimó las alegaciones relacionadas al modem de comunicación, los paneles solares, el daño de enseres y la reubicación de baterías de una pared a otra sin costo. Por consiguiente, ordenó a Caribbean Solar Energy, LLC (en adelante, "Caribbean Solar" o "recurrida") pagar a la recurrente la suma de trescientos setenta y cinco dólares ($375.00), más el pago de intereses, a reinstalar sin costo el protector de voltaje que removió y, reparar sin costo el receptáculo de la marquesina de la residencia de la querellante.

Por los fundamentos que exponemos a continuación, se confirma la *Resolución* recurrida.

**I.**

El 13 de noviembre de 2024, Santana Ortega presentó una *Querella* en el DACo en contra de Caribbean Solar.[1] Alegó que Caribbean Solar instaló en su residencia un sistema fotovoltaico (en adelante, "sistema") bajo el programa "Nueva Energía" del Departamento de Vivienda y que, desde su instalación, presentó múltiples problemas. En específico, sostuvo que Caribbean Solar no programó adecuadamente el sistema de comunicación interno "Cell Modem" y que, como consecuencia, cada vez que el internet se interrumpe, el sistema comienza a funcionar con baterías. Alegó, además, que Caribbean Solar removió un protector de voltaje y al hacerlo, sus enseres comenzaron a apagarse y a recibir impacto de los bajones de voltaje. También incluyó, como parte de sus alegaciones que, el día de la instalación del sistema, Caribbean Solar perforó el único enchufe que había en la marquesina de la residencia de Santana Ortega. Además, reclamó que una de las baterías del sistema se instaló en una pared que tenía un problema de filtración de agua, lo cual, según Santana Ortega, se lo indicó al instalador, y solicitó su reubicación. Por último, alegó que acordó con Caribbean Solar la instalación de paneles solares monocristalinos, pero que instalaron paneles polycristalinos.

Por su parte, el 22 de noviembre 2024, Caribbean Solar presentó una *Moción Sometiendo Contestación a Querella*.[2] En la referida contestación, sostuvo que, en cuanto al enchufe afectado, se comunicó con Santana Ortega y ofreció acudir a su residencia para validar el potencial defecto y realizar la reparación que proceda. Alegó que, sin embargo, Santana Ortega se negó a recibir el personal profesional de Caribbean Solar para atender la queja. Referente al regulador de voltaje, sostuvo que fue removido con la anuencia y presencia de Santana Ortega y que, también le ofreció reinstalar el mismo, pero que Santana Ortega negó el acceso a su hogar. En cuanto a la ubicación de los paneles solares, alegó que se realizó con la anuencia,

---

[1] Apéndice Núm. 1 de la Entrada Núm. 1 del Sistema Unificado de Manejo y Administración de Casos del Tribunal de Apelaciones (SUMAC TA).

[2] Apéndice Núm. 3 de la Entrada Núm. 1 del SUMAC TA.

autorización y presencia de Santana Ortega, en un área preseleccionada por esta. Sostuvo que accedió a reubicar dichos paneles, pero que la reubicación no está cubierta por garantía ni obligación contractual, y que, dado el costo que existe por la labor, Santana Ortega debía responsabilizarse por los costos asociados a esa gestión. En relación con la programación del "Cell Modem", alegó que se instaló adecuadamente, conforme a los estándares del manufacturero y la industria. Por último, respecto al tipo de paneles solares instalados, fue el adquirido por Santana Ortega, según el contrato entre estos.

Así las cosas, el 20 de noviembre de 2024, DACo notificó a las partes una *Citación de Inspección*[3] a ser realizada el 13 de diciembre de 2024 en la residencia de Santana Ortega. En base a dicha inspección, se sometió un *Informe de Inspección Generales* el 16 de diciembre de 2024.[4] En el referido informe se plasmaron los hallazgos según las alegaciones. En particular, el inspector observó que el sistema de comunicación estaba encendido y funcionando, que el protector de voltaje fue removido, un cable eléctrico fue perforado, no observó filtración en la pared, y que los paneles instalados fueron policristalinos. Determinó como acción a seguir una vista administrativa.

Posteriormente, según se desprende del expediente, el 30 de diciembre de 2024, Santana Ortega sometió *Objeciones al Informe de Inspección de la Querella # ARE-0006671*.[5] En esencia, objetó los hallazgos esbozados en el mencionado informe y solicitó, en específico, que Caribbean Solar instalara el protector de voltaje removido, pagara los enseres que perdió, que reparara o pagara la reparación del cable perforado en el área de la marquesina, al igual que asumir el costo del enchufe alterno adquirido. Además, sostuvo que el inspector no inspeccionó la pared y que la instalación se realizó de manera incorrecta. En cuanto al tipo de panel

---

[3] Apéndice Núm. 4 de la Entrada Núm. 1 del SUMAC TA.

[4] Apéndice Núm. 5 de la Entrada Núm. 1 del SUMAC TA.

[5] Apéndice Núm. 6 de la Entrada Núm. 1 del SUMAC TA.

instalado, sostuvo que le ofrecieron paneles monocristalinos, pero que Caribbean Solar instaló paneles policristalinos, los cuales son más débiles y que, en la manera en que fueron instalados, es imposible darles mantenimiento por la parte de abajo.

Luego de celebrada una vista administrativa el 28 de abril de 2025, se emitió la *Resolución* que hoy nos ocupa, el 20 de agosto de 2025, notificada el día siguiente.[6] El foro administrativo concluyó que no existe evidencia, ni la recurrente demostró, que la instalación del sistema realizada por el recurrido haya sido deficiente. Señaló que tampoco existe evidencia, ni la querellante demostró, que los paneles instalados no corresponden a los contratados. Asimismo, determinó que no existe evidencia fehaciente, ni la recurrente demostró, que la instalación y/o el servicio brindado haya ocasionado daños a los enseres de la residencia. En cuanto a la alegada filtración, el foro concluyó que no existe evidencia, ni la recurrente demostró, que la instalación de baterías en la pared que se tiene que romper para corregir el problema de filtración en el baño no haya sido realizada conforme a lo acordado. Razonó que la recurrente nunca objetó la instalación del sistema ni comunicó problema alguno previo a la fecha en que se realizó la instalación. Expresó, además, que no existe controversia en cuanto a la remoción del protector de voltaje ni sobre la perforación que afectó el enchufe de la marquesina. Puntualizó que Caribbean Solar ha estado dispuesto a resolver ambas situaciones, y que procede que la querellante les permita acceso a la propiedad para que cumpla con ello.

En consecuencia de todo lo anterior, desestimó las alegaciones relacionadas al modem de comunicación, los paneles solares, el daño de enseres y la reubicación de batería de una pared a otra sin costo. De otra parte, ordenó a Caribbean Solar a pagar a la recurrente la suma de trescientos setenta y cinco dólares ($375.00), más el pago de intereses,  a reinstalar sin costo el protector de voltaje que removió y, reparar sin costo el receptáculo de la marquesina de la residencia de la querellante.

---

[6] Apéndice Núm. 2 de la Entrada Núm. 1 del SUMAC TA.

En el referido dictamen, se hicieron las siguientes determinaciones de hechos:

1.  El querellado Caribbean Solar Energy LLC (en adelante Caribbean Solar) se dedica a la compraventa e instalación de sistemas o equipos solares.

2.  La querellante cualificó bajo el programa "Nueva Energía" del Departamento de Vivienda de Puerto Rico para obtener un *voucher* y así costear un sistema fotovoltaico para su residencia.

    Dicho programa permite al benefactor cualificado escoger entre varias compañías de instalación de sistemas de energía renovable y contratar directamente con la misma. Luego de efectuada la instalación[,] un inspector verifica y luego el Departamento de Vivienda desembolsa el dinero.

3.  En o allá para septiembre de 2023 la querellante le solicitó al querellado Caribbean Solar sus servicios para la adquisición e instalación de un sistema fotovoltaico en su residencia, a ser costeado bajo el programa "Nueva Energía".

4.  En diciembre de 2023 la querellante comenzó a tener un problema de salidero de agua en una bañera. El plomero que contrató determinó que había que romper la pared, sacar la bañera y romper la loza para poder corregir la filtración.

5.  En o allá para febrero de 2024 el querellado visitó la residencia de la querellante y verificó las áreas, incluyendo las paredes, para la instalación del sistema. La querellante no le manifestó a Caribbean Solar problema alguno en ninguna de las paredes.

6.  El 30 de marzo de 2024 la querellante Griselle Santana firmó un contrato con el querellado Caribbean Solar para la adquisición e instalación de un sistema fotovoltaico, costeado con el incentivo federal del programa "Nueva Energía". Los equipos contratados incluían 9 placas solares de 480w, 3 baterías y 9 inversores.

    La querellante tampoco notificó para esa fecha problema alguno con las paredes de la residencia.

7.  El querellado preparó la orden conforme la cotización, inspección y/o evaluación realizada previamente en la residencia de la querellante.

8.  En mayo de 2024 Caribbean Solar visitó la residencia de la querellante y realizó la instalación del sistema conforme estaba dispuesto en la orden. La determinación al ubicar o instalar los equipos también depende del diseño que tenga la casa eléctricamente. La instalación de los equipos requiere unas medidas de espacio, entre otros.

    La instalación se realizó en un término de dos días. La querellante estuvo presente durante la instalación del sistema.

9.  Durante los trabajos de instalación, el querellado perforó un cable del enchufe de la marquesina. La querellante escribió una anotación al respecto en el documento que el querellado le dio a firmar sobre la prueba que se hizo a los enseres del hogar luego de la instalación del Sistema. Ello a los efectos de dar por reclamado cualquier daño que hubiera en el enchufe de la marquesina.

10. Posteriormente la querellante le reclamó al querellado la situación con el enchufe de la marquesina, que no podía usar el mismo.

   La querellante tuvo que contratar un electricista para la instalación y cableado de un receptáculo alterno en la marquesina. [E]sta pagó por dicho trabajo la suma de $375.00.00.[*sic*]

11. La querellante también reclamó la reinstalación de un protector de voltaje que se removió durante la instalación del sistema, le alegó al querellado que no instaló el sistema de comunicación interno "cell modem" de las baterías y que se instalaron paneles fotovoltaicos monocristalinos en vez de ser policristalinos. Además la querellante le solicitó al querellado la reubicación de unas baterías en otra pared para poder corregir el problema de filtración de la bañera, toda vez que tenía que romper la pared.

12. El querellado le indicó a la querellante que la reubicación de las baterías en otra pared tenía un costo[,] ya que conllevaba un cambio en la orden que se hizo para la instalación. En cuanto al receptáculo afectado, el querellado estuvo dispuesto a enviar un técnico para corregir la situación pero la querellante no estaba dispuesta a permitir el acceso a su propiedad[,] a menos que se le reubicaran las baterías sin costo. El querellado también estuvo dispuesto a reinstalar el regulador de voltaje[,] pero la querellante no permitió acceso a su hogar.

   Con relación a la alegación sobre el modem, el querellado le indicó a la querellante que se había instalado dicho dispositivo, que el problema surge por deficiencia con la señal del proveedor de internet que tiene la querellante.

13. El 13 de noviembre de 2024 la querellante radicó en el DACO la querella de epígrafe. [E]sta reclamó, en síntesis, lo siguiente: 1) que el querellado no programó de forma adecuada el sistema de comunicación interno *cell modem*; 2) que el querellado removió un protector de voltaje y los bajones de voltaje han afectado sus enseres; 3) que el querellado perforó el cable del enchufe de la marquesina; 4) que la tercera batería se instaló en una pared que tiene un problema de filtración de agua de la bañera, que le indicó al instalador que no se podía instalar en dicha pared, alega que toda la instalación cabía en la primera pared y que la instalación no se hizo de manera apropiada; y 5) que el querellado instaló paneles solares policristalinos cuando debieron ser monocristalinos.

14. El 13 de diciembre de 2024 el señor Edwin Rodriguez López, investigador del DACO, llevó a cabo una inspección del sistema. Posteriormente [e]ste emitió un informe de inspección, el cual fue notificado a las partes el 16 de diciembre de 2024. Conforme el informe de inspección, los hallazgos fueron los siguientes:

   - el sistema fotovoltaico estaba encendido y exportando energía hacia la casa y exportando energía hacia Luma Energy según mostraba la aplicación en línea.
   - las baterías de almacenamiento se encontraban llenas y a capacidad.
   - se inspeccionó el módulo de comunicación wi-fi y el mismo estaba encendido y funcionando

- se verificó la pared donde la querellante alega que hay una filtración y no se observó filtración en la misma. La querellante se opuso a que el investigador inspeccionara el baño. El querellado midió la pared donde se encuentra el otro equipo y donde la querellante quieres que se reubique la batería y según las medidas obtenidas no es posible porque no cabe.

15. No existe evidencia ni la querellante demostró que la instalación y/o programación del *cell modem* realizada por el querellado haya sido inadecuada.

No existe evidencia ni la querellante demostró que el sistema del *cell modem* tuviera algún defecto de fábrica.

El modem de internet no afecta la operación del sistema sino que su función es para que la querellante pueda monitorear una aplicación que tiene para poder verla información del sistema. El modem es un mecanismo secundario para poder monitorear la aplicación ya que el mecanismo primario es el wi-fi que tiene que tener el cliente para poder monitorear el sistema. El funcionamiento del modem depende de la señal que obtenga del proveedor de internet que haya contratado la querellante.

16. El querellado continúa dispuesto a reinstalar sin costo alguno el protector de voltaje que se removió durante la instalación del sistema. El protector de voltaje no está relacionado con el sistema, por lo que su remoción no altera el sistema.

No existe evidencia ni la querellante demostró fehacientemente que la remoción del protector cause o haya causado algún problema.

17. El querellado continúa dispuesto a corregir la situación del cable eléctrico perforado en el receptáculo de la marquesina.

18. No existe evidencia ni la querellante demostró que la instalación del sistema realizada por el querellado haya sido deficiente o no haya sido realizada conforme lo acordado.

19. No existe evidencia ni la querellante demostró que el sistema adquirido le fue vendido con alguna condición o defecto.

20. No existe evidencia ni la querellante demostró que el sistema no esté funcionando correctamente.

21. No existe evidencia ni la querellante demostró que los paneles solares instalados por el querellado no corresponden a los contratados.

22. No existe evidencia ni la querellante demostró que la instalación y/o el servicio brindado por el querellado haya ocasionado daños a los enseres de la residencia.

En desacuerdo, el 10 de septiembre de 2025, Santana Ortega presentó una *Solicitud de Reconsideración*.[7] En dicho escrito, en esencia,

---

[7] Apéndice Núm. 8 de la Entrada Núm. 1 del SUMAC TA.

objetó las determinaciones de hechos realizadas por el foro administrativo y solicitó la revocación de la determinación emitida por DACo. El 11 de septiembre de 2025, se declaró *No Ha Lugar* la solicitud de reconsideración presentada por Santana Ortega.

Inconforme, el 11 de octubre de 2025, la recurrente compareció ante nos mediante un *Recurso de Revisión Administrativa* [8] y esbozó los siguientes señalamientos de error:

> **PRIMER ERROR:** ERRÓ EL DACO AL EMITIR UNA RESOLUCIÓN CUANDO NO EXISTE UN RÉCORD ADMINISTRATIVO COMPLETO VERIFICABLE DEBIDO A QUE LA GRABACIÓN DE LA VISTA ADMINISTRATIVA DEL 28 DE ABRIL DE 2025 ES SUSTANCIALMENTE ININTELIGIBLE, VIOLANDO EL PRINCIPIO DE EXCLUSIVIDAD DEL RÉCORD Y EL MANDATO LEGAL DE GRABAR LAS VISTAS ADMINISTRATIVAS ESTABLECIDO EN LA SECCIÓN 3.13 DE LA LPAU (LEY 38- 2017) Y LA REGLA 29.5 DEL REGLAMENTO 8034 DEL DACO, RESULTANDO EN UNA RESOLUCIÓN QUE CARECE DE EFECTO LEGAL Y POR LO TANTO NULA.

> **SEGUNDO ERROR:** ERRÓ EL DACO AL RECHAZAR LAS OBJECIONES AL INFORME DE INSPECCIÓN NOTIFICADAS OPORTUNAMENTE POR LA PARTE RECURRENTE EL 31 DE DICIEMBRE DE 2024 MEDIANTE CORREO POSTAL CERTIFICADO, ÚNICO MEDIO DISPONIBLE POR ESTAR CERRADAS LAS OFICINAS DEL DACO CONFORME A LA ORDEN EJECUTIVA GUBERNAMENTAL NÚM. OE-2024-038, VIOLENTANDO EL DEBIDO PROCESO DE LEY Y EL DERECHO ESTATUTARIO DE LA PARTE RECURRENTE A REFUTAR EL INFORME DE INSPECCIÓN CONFORME A LA REGLA 15.2 DEL REGLAMENTO DE PROCEDIMIENTOS ADJUDICATIVOS DEL DACO NÚM. 8034.

Mediante *Resolución* emitida el 21 de octubre de 2025, le ordenamos a la parte recurrida que presentara su alegato en oposición. En cumplimiento de ello, el 30 de octubre de 2025, Caribbean Solar presentó el aludido alegato.

En síntesis, alegó que la *Resolución* emitida por la agencia se basó en la totalidad del expediente, y que evaluó la controversia de manera completa, razonada y equitativa. Adujo que las determinaciones del DACo descansaron sobre evidencia sustancial, particularmente el informe de inspección, el cual demostró, según alegaron, que el sistema fotovoltaico funcionaba adecuadamente, que las baterías estaban operativas, y que no existía daño probado a los enseres eléctricos. Sostuvieron que esas

---

[8] Entrada Núm. 1 del SUMAC TA.

conclusiones, combinadas con la disposición de Caribbean Solar de realizar correcciones menores, constituyen un ejercicio de adjudicación técnico y razonable.

Con el beneficio de la comparecencia de ambas partes, procedemos a esbozar el marco doctrinal aplicable a la controversia que hoy nos ocupa.

## II.

## -A-

La revisión judicial permite a los tribunales garantizar que las agencias administrativas actúen dentro de las facultades delegadas por ley, cumplan con los mandatos constitucionales aplicables, y asegura que los ciudadanos tengan un foro al cual recurrir para vindicar sus derechos. *Voilí Voilá Corp. et al v. Mun. Guaynabo,* 213 DPR 743, 753 (2024). En lo atinente, en el ámbito administrativo, los tribunales apelativos deben conceder una gran deferencia a las decisiones emitidas por las agencias administrativas debido a la vasta experiencia y conocimiento especializado en los asuntos que les han sido encomendados. *Otero Rivera v. USAA Fed. Savs. Bank*, 214 DPR 473, 484; *Asoc. Fcias. v. Caribe Specialty et al. II.,* 179 DPR 923, 940 (2010); véanse también, *Martínez v. Rosado*, 165 DPR 582, 589, (2005); *Otero v. Toyota*, 163 DPR 716, 727 (2003).

Ahora bien, nuestro Tribunal Supremo ha reiterado que la deferencia reconocida a las decisiones de las agencias administrativas habrá de ceder, solamente, cuando la misma no esté basada en evidencia sustancial, cuando la agencia ha errado en la aplicación de la ley y cuando su actuación resulte ser una arbitraria, irrazonable o ilegal. *Pérez López v. Depto. Corrección*, 208 DPR 656, 673 (2022); *The Sembler Co. v. Mun. de Carolina*, 185 DPR 800, 822 (2012). En el escenario particular de las cuestiones de derecho, el Tribunal Supremo ha proferido las siguientes expresiones:

> Hoy hacemos eco a las palabras del foro federal y concluimos que la interpretación de la ley es una tarea que corresponde inherentemente a los tribunales. Así, enfatizamos la necesidad de que los foros judiciales, en el ejercicio de su función revisora, actúen con el rigor que prescribe la LPAU, supra. Como corolario, al enfrentarse a un recurso de revisión judicial proveniente de una agencia administrativa, será el deber de los tribunales revisar las conclusiones de derecho en todos sus aspectos. No guiados por la deferencia automática a la que alude el DACo, sino que por los

mecanismos interpretativos propios del Poder Judicial. *Vázquez y otro v. Consejo de Titulares y Junta de Directores del Condominio Los Corales y otros*, 2025 TSPR 56.

Por otra parte, nuestro Más Alto Foro ha sido enfático en que las determinaciones de hechos de organismos y agencias públicas tienen a su favor una presunción de regularidad y corrección, que debe ser respetada mientras la parte que las impugne no produzca suficiente evidencia para derrotarla. *OEG v. Martínez Giraud,* 210 DPR 79, 89 (2022); *Camacho Torres v. AAFET*, 168 DPR 66, 91 (2006); *véanse también*, *Otero v. Toyota*, supra; *Fac. C. Soc. Aplicadas, Inc. v. C.E.S.*, 133 DPR 521, 532 (1993).

En cambio, tenemos autoridad para revisar las conclusiones de derecho en todos sus aspectos. Sección 4.5 de la Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico (en adelante, "LPAU"), Ley Núm. 38 de 30 de junio de 2017, según enmendada, 3 LPRA sec. 9675. Es decir, ostentamos la facultad para revisarlas completa y absolutamente. *IFCO Recycling v. Aut. Desp. Sólidos,* 184 DPR 712, 745 (2012); *Assoc. Ins. Agencies, Inc. v. Com. Seg*. P.R., 144 DPR 425, 436 (1997). Sin embargo, ello no implica "la sustitución automática del criterio e interpretación del organismo administrativo". *Capó Cruz v. Jta. Planificación et al*., 204 DPR 581, 591 (2020); *Rolón Martínez v. Supte. Policía*, 201 DPR 26, 36 (2018).

**-B-**

El Art. II, Sec. 7 de la Constitución de Puerto Rico reconoce el derecho a un debido proceso de ley como garantía protectora de los intereses de libertad y propiedad. Const. ELA [Const. PR], LPRA Tomo I. La referida salvaguarda exige que el Estado realice un procedimiento justo y equitativo al momento de intervenir con el interés propietario de una persona. *Torres Rivera v. Policía de PR*, 196 DPR 606, 624 (2016). Ante un reclamo fundamentado en la vertiente procesal del debido proceso de ley, corresponde examinar si existe un interés que amerite protección. *Íd.* De responder en la afirmativa, procede evaluar cuál es el procedimiento debido. *Íd.*

Los requisitos para garantizar la modalidad procesal del debido proceso de ley son los siguientes: (1) la notificación adecuada del proceso; (2) un proceso ante un juez imparcial; (3) la oportunidad de ser oído; (4) el derecho a contrainterrogar a los testigos y examinar la evidencia presentada en su contra; (5) el tener asistencia de abogado, y (6) que la decisión se base en el expediente del caso. *Calderón Otero v. C.F.S.E.*, 181 DPR 386, 399 (2011). A su vez, la Sección 3.13 de la LPAU, *supra*, 3 LPRA sec. 9653, dispone que "[l]a vista deberá grabarse o estenografiarse[…]", como parte del procedimiento durante una vista administrativa.

Por otro lado, la Regla 29.5 del Reglamento de Procedimientos Adjudicativos del DACo, Reglamento Núm. 8034 de 14 de junio de 2011, dispone, en parte, que "[c]ualquier parte podrá solicitar una copia certificada del expediente y de la transcripción de la vista[…] mediante el pago de los cargos correspondientes."

El Tribunal Supremo de Puerto Rico ha expresado que "[e]s imprescindible que se traiga a la consideración del foro revisor la transcripción de la vista celebrada o una exposición narrativa de la prueba. En ausencia de tal prueba, difícilmente se podrá descartar la determinación impugnada." *Graciani Rodríguez v. Garaje Isla Verde*, 202 DPR 117, 129 (2019), citando a *Camacho Torres v. AAFET*, 168 DPR 66, 92 (2006). Así, si la parte promovente no eleva una transcripción o una exposición narrativa de la prueba oral presentada, los tribunales apelativos no deben intervenir con la apreciación de la prueba, ya que no tiene manera de evaluarla. *Graciani Rodríguez v. Garaje Isla Verde, supra;* J.A. Echevarría Vargas, *Derecho administrativo puertorriqueño*, San Juan, Ed. SITUM, 2017, pág. 325.

De otra parte, el Reglamento de Procedimientos Adjudicativos del DACo, *supra*, le concede a la mencionada agencia la facultad de realizar investigaciones e inspecciones. En específico, la Regla 14.2 del mencionado Reglamento, *supra*, dispone que "[e]l Departamento, podrá ordenar la inspección del objeto o del servicio llevado a cabo que motivó la querella,

por un representante del Departamento o por persona autorizada a esos efectos." De igual modo, la Regla 15.2 del referido Reglamento, *supra*, establece que las partes tienen quince (15) días, desde la notificación de informes de investigación, para presentar cualquier objeción que tengan al informe. Dichas objeciones deberán ser presentadas por escrito. Estas objeciones, según la precitada regla, deben ser precisas y específicas y, a su vez, deben indicar si requiere la presencia del investigador en la vista administrativa.

Establecido el marco doctrinal aplicable, procedemos a disponer de la controversia ante nuestra consideración.

**III.**

En el caso que nos ocupa, la recurrente señala como errores dos asuntos de naturaleza procesal. Primero, sostiene que DACo erró al emitir una resolución cuando no existe un récord administrativo completo verificable, debido a que la grabación de la vista administrativa es sustancialmente ininteligible. Ahora bien, la recurrente se limitó a presentar ante este foro, para sustentar dicho error, un recibo del pago realizado para la regrabación, una foto del disco de la alegada regrabación, una carta solicitando la regrabación a la agencia y una declaración jurada donde expresa que no ha tenido acceso al audio de la vista administrativa. Sin embargo, no colocó a este tribunal en posición de atender correctamente sus planteamientos sobre la grabación alegadamente ininteligible. Esto, puesto que no envió una grabación del referido audio para demostrar si en efecto es ininteligible o no, ni solicitó la reproducción de la prueba oral, de conformidad a la forma y términos dispuestos en las Reglas 66 y 76 del del Reglamento del Tribunal de Apelaciones, según enmendada, *In re Aprob. Enmdas. Reglamento TA*, 2025 TSPR 42, págs. 99 y 103, 215 DPR ___ (2025). Al no tener a nuestra disposición el audio, se imposibilita el pasar juicio sobre su aducida ininteligibilidad y si efectivamente, el estado de la grabación viola el principio de exclusividad del récord.

En su segundo error, la recurrente señala que erró DACo al rechazar las objeciones al informe de inspección notificadas el 31 de diciembre de 2024 mediante correo postal certificado, único medio disponible por estar cerradas las oficinas del DACo, conforme a una orden ejecutiva gubernamental. A pesar de que dicha parte presentó la referida orden ejecutiva, el recibo del correo certificado y las objeciones, no incluyó prueba alguna que sustente que las objeciones en efecto fueron rechazadas por la agencia. Aun si hubieran sido rechazadas las objeciones, posteriormente, en virtud de la *Notificación de Vista Administrativa*[9], se les permitió a las partes hacer todas las alegaciones y presentar toda la evidencia documental y testifical que consideraran necesarias para su caso. Así pues, la recurrente tuvo la oportunidad de presentar sus objeciones al informe de inspección, al igual que cualquier otra prueba pertinente que demostrara su caso en contra del recurrido. Al igual que el primer error, ante la ausencia de prueba que sostenga el rechazo por parte de la agencia, este Tribunal se ve imposibilitado de examinar la procedencia de los errores levantados.

Cabe destacar que, a pesar de la deferencia concedida a las decisiones emitidas por las agencias administrativa, esta habrá de ceder, cuando la misma no esté basada en evidencia sustancial, cuando la agencia ha errado en la aplicación de la ley y cuando su actuación resulte ser una arbitraria, irrazonable o ilegal. *Pérez López v. Depto. Corrección, supra.* Sin embargo, la recurrente no ha demostrado que la agencia incurrió en ninguno de lo antes mencionado. Y es que, le corresponde a la recurrente demostrar que las determinaciones de hechos no se sostienen en la prueba sustancial del expediente administrativo, o que las conclusiones de la agencia son irrazonables.

A la luz de lo expuesto, y de la prueba documental que obra en el expediente ante nuestra consideración, la recurrente no cumplió con el peso de la prueba requerido para rebatir la presunción de corrección que reviste a la decisión de DACo. Por esto, se confirma la *Resolución* recurrida.

---

[9] Apéndice Núm. 7 de la Entrada Núm. 1 del SUMAC TA.

**IV.**

Por los fundamentos antes expuestos, confirmamos la *Resolución* recurrida.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones